## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GOMIDAS G. HARTOUNIAN, | : | |
| | : | |
| Petitioner, | : | Civ. No. 18-1386 (PGS) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | **OPINION** |
| | : | |
| Respondent. | : | |

**PETER G. SHERIDAN, U.S.D.J.**

### I.     INTRODUCTION

Petitioner, Gomidas G. Hartounian ("Petitioner" or "Hartounian"), is proceeding *pro se* with an amended motion to vacate, set aside or correct his federal sentence pursuant to 28 U.S.C. § 2255. For the following reasons, Petitioner's amended § 2255 motion will be denied and a certificate of appealability shall not issue.

### II.     FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was the Chief Financial Officer of a company, Harco Industries, Inc. USC. (*See* Pre-Sentence Report ("PSR") ¶16). Petitioner defrauded the company of millions of dollars. (*See* PSR ¶¶ 14-28). Petitioner failed to report these additional funds he obtained as income on his federal tax returns from 2010-2012. (*See id.* ¶¶ 29-30). A criminal complaint was brought against Petitioner and he was arrested on November 25, 2014. (*See id.* ¶ 33). On May 15, 2015, a grand jury indicated Petitioner on one court of wire fraud. (*See* Crim. No. 15-234 ECF 14). On April 6, 2016, a superseding information was filed against Petitioner charging him with one count of wire fraud and one count of tax evasion. (*See id.* ECF 50). Petitioner pled guilty to both counts pursuant to a plea agreement on April 6, 2016. (*See id.* ECF 53). On November 10, 2016,

Petitioner was sentenced to thirty-six months imprisonment on each count to run concurrently, to be followed by thirty-six months of supervised release. (*See id.* ECF 67). Petitioner was also ordered to pay over four million dollars in restitution. (*See id.*) This restitution amount was divided between the victims of his fraud ($3.5 million) and over $600,000 owed to the Internal Revenue Service ("IRS"). (*See id.*).

On November 17, 2016, this Court entered an amended judgment to specifically state that restitution was to first be paid to the victims of Petitioner's fraud and then to the IRS. (*See id.* ECF 69). Petitioner did not file a direct appeal of his judgment of conviction.

In a letter dated October 30, 2017, Petitioner requested the appointment of counsel. (*See id.* ECF 73). In this letter, Petitioner stated that counsel may have misled him regarding judicial civil asset forfeiture. (*See id.*). Furthermore, Petitioner explained that he was given "no advice on upward departures at sentencing and or the risks in connection with the assets forfeiture[.]" (*Id.*). Alternatively, Petitioner stated he would accept serving out the rest of his sentence on home confinement. (*See id.*) However, he stated that his letter was not to be construed as a withdrawal of his plea agreement. (*See id.*)

On November 28, 2017, this Court denied Petitioner's request for the appointment of counsel. (*See id.* ECF 76). This Court noted that before it was prepared to consider a request for the appointment of counsel, Petitioner needed to first file a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (*See id.*)

In a letter dated January 18, 2018, Petitioner followed up his October 30, 2017 letter. (Crim. No. 15-234 ECF 78). In this letter January 18 2018 letter, Petitioner noted that while he was not seeking the withdrawal of his plea agreement, he was still seeking either home confinement or probation. (*See id.*). Petitioner further noted that if home confinement or

probation was not granted, he would need the appointment of counsel "to advise on the appellate issues which are not limited to ineffective assistance of counsel; 4th, 5th and 6th Amendment Violations, CAFRA Violations and Violation of 18 – U.S.C. – 981, potential breach of the Plea Agreement." (*See id.*). The letter also attached his letter dated October 30, 2017. (*See id.*). In addition to docketing this letter in Petitioner's criminal action, Crim. No. 15-234, the Clerk also docketed the letter in this civil action and titled it as a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (*See* Civ. No. 18-1386 ECF 1).

On February 16, 2018, this Court administratively terminated this civil matter as Petitioner had not used the correct updated 28 U.S.C. § 2255 form. (*See id.* ECF 2). The Clerk sent Petitioner a blank § 2255 form. (*See id.*). In sending Petitioner a blank § 2255 form, this Court specifically noted that service of this form was not to be construed as a finding that Petitioner's § 2255 filing was or was not timely. (*See* Civ. No. 18-1386 ECF 2).

In a letter dated March 16, 2018, Petitioner requested an additional forty-five days in which to file his § 2255 motion. (*See* Civ. No. 18-1386 ECF 3). This Court granted that request on April 3, 2018. (*See id.* ECF 4).

In a document dated March 27, 2018, and received by this Court on April 6, 2018, Petitioner submitted an amended § 2255 motion. (*See* Civ. No. 18-1386 ECF 5). The amended § 2255 motion raises three claims. First, Petitioner states that he entered the plea agreement unknowingly and involuntarily due to counsel's improper advice and due to his ineffectiveness ("Claim I"). More specifically, Petitioner states that he entered into the plea agreement believing that the same appeal waiver was in a first plea agreement that ultimately was not agreed to. According to Petitioner, it was later discovered that the first plea agreement did not contain an appeal waiver. Counsel purportedly gave bad advice to Petitioner and lied to him in connection

3

with the appeal waiver issue to get him to sign the plea agreement by stating that the actual loss amount was going to be done at sentencing. (*See id.* at 4).

In Petitioner's second claim, he asserts that counsel was ineffective for failing to investigate the actual losses resulting from the offenses ("Claim II"). Petitioner claims that had counsel investigated this issue, it would have proven that the government's alleged amount of losses was erroneously inflated. (*See id.* at 5).

Finally, in Petitioner's third claim, he asserts that counsel was ineffective for failing to file a notice of appeal despite Petitioner's instructions to him to do so ("Claim III"). (*See id.* at 7). Petitioner states that he wanted counsel to file a notice of appeal because the loss amounts were erroneous. (*See id.*) Petitioner states that his counsel told him "he would take care of everything and instead did nothing." (*Id.*)

On August 7, 2018, this Court advised Petitioner pursuant to *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999). (*See* Civ. No. 18-1386 ECF 12).

Respondent filed its response to the amended § 2255 motion on November 8, 2018. (*See* Civ. No. 18-1386 ECF 20). Respondent argues that the amended § 2255 motion is untimely. Alternatively, Respondent argues that Claims I and II can be denied without the need for an evidentiary hearing. Petitioner did not file a reply. The matter is now ripe for adjudication.

## III.    LEGAL STANDARD

A motion to vacate, set aside or correct a sentence of a person in federal custody pursuant to 28 U.S.C. § 2255 entitles a prisoner to relief if "the court finds . . .  [t]here has been such a denial or infringement of the constitutional rights of the prisoner as to render judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless

they are clearly frivolous based on the existing record.'" *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)) (citing R. Governing § 2255 Cases R. 4(b)). A District Court "is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *Id.* (quoting *Forte*, 865 F.2d at 62). The Third Circuit has stated that this standard creates a "'reasonably low threshold for habeas petitioners to meet.'" *Id.* (quoting *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (quoting *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001))). Accordingly, this Court abuses its discretion "if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief." *Id.* (citing *McCoy*, 410 F.3d at 134).

## IV.   DISCUSSION

### A.  Statute of Limitations

Respondent first argues that Petitioner's amended § 2255 motion is untimely in its entirety. For the following reasons, this Court finds that Petitioner's amended § 2255 motion is untimely, but only in part.

Section § 2255(f) includes a one-year period in which a petitioner may file a request for relief, which runs form the latest of four specified events:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence[.]

28 U.S.C. § 2255(f). Because Petitioner does not contend that new facts have been recently discovered which would support his petition, nor has he pointed to a new right recognized by the Supreme Court and made retroactively applicable nor that the government impeded Petitioner, this Court will only examine § 2255(f)(1) as to whether his claims are time-barred.

Petitioner did not file a direct appeal in this case. Where a petitioner does not file a direct appeal, his judgment becomes final when the time to file that appeal has run. *See Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). Petitioner had fourteen days in which to file his notice of appeal. *See* Fed. R. App. P. 4(b)(1)(A). Thus, Petitioner's judgment became final on December 1, 2016, or fourteen days after this Court entered the amended judgment on November 17, 2016. Accordingly, Petitioner had until December 1, 2017 in which to file his § 2255.

Petitioner did not file what the Clerk interpreted to be his original § 2255 motion until January, 2018. (*See* Civ. No. 18-1386 ECF 1). Furthermore, he did not file his amended § 2255 motion until March 27, 2018 pursuant to the prisoner mailbox rule. ***See Houston v. Lack***, 487 U.S. 266, 270–71 (1988); *see also Maples v. Warren*, No. 12–0993, 2012 WL 1344828, at *1 n.2 (D.N.J. Apr. 16, 2012) ("Often times, when the court is unable to determine the exact date that a petitioner handed his petition to prison officials for mailing, it will look to the signed and dated certification of the petition."). Thus, at first glance, this action appears untimely because neither document was filed prior to December 1, 2017. However, Petitioner did file his October 30, 2017 letter within the applicable statute of limitations. Therefore, this Court must analyze whether that letter makes this proceeding timely.

Petitioner's October 30, 2017 letter *was not* a§ 2255 motion. Instead, as Petitioner makes clear in his letter, and as interpreted by this Court, it was a request to appoint of counsel. This preliminary request for the appointment of counsel does not stop the running of the statute of

limitations. *See Isley v. Az. Dep't of Corr.*, 383 F.3d 1054, 1055 (9th Cir. 2004) (citing *Woodford v. Garceau*, 538 U.S. 202, 210 (2003)). Thus, construing it as a motion to appoint counsel, it is insufficient to make this action timely. Indeed, in denying Petitioner's motion on November 28, 2017, or prior to the expiration of the statute of limitations, this Court specifically noted that Petitioner needed to file a § 2255 motion in the first instance before this Court would rule on a request to appoint counsel. (*See* Crim. No. 15-234 ECF 76).

Nevertheless, giving Petitioner every benefit of the doubt, if construed liberally, one may view the October 30, 2017 letter as Petitioner's initial attempt to bring a § 2255 motion. In the letter, Petitioner complained about his counsel's purported ineffectiveness regarding the *government's execution* of his asset forfeiture as well as counsel's lack of advice about upward departures during sentencing. (*See* Civ. No. 18-1386 ECF 1). If Petitioner's claims in his amended § 2255 motion relate back to the October 30, 2017 letter, then his claims are timely because the October 30, 2017 letter was filed prior to the expiration of the one-year statute of limitations on December 1, 2017. This relation back/timeliness issue must be decided on a claim-by-claim basis. *See Fielder v. Varner*, 379 F.3d 113, 118 (3d Cir. 2004); *see also Capozzi v. United States*, 768 F.3d 32, 33 (1st Cir. 2014) ("[T]he period of limitation in 28 U.S.C. §2255(f) should be applied on a claim-by-claim basis.").

> Pursuant to Rule 15(c), an amendment that is otherwise untimely "relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court has cautioned that courts should not interpret "conduct, transaction, or occurrence" in such a broad manner so as to construe essentially all amendments as permissible under the relation-back doctrine. *See Mayle v. Felix*, 545 U.S. 644, 656–57, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005). For example, in the habeas context, the Supreme Court has refused to interpret "conduct, transaction, or occurrence" as broadly encompassing a

"habeas petitioner's trial, conviction, or sentence," reasoning that "[u]nder that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." *Id.* Instead, it has counseled that an amendment relates back to a habeas petition under Rule 15(c) "[s]o long as the original and amended petitions state claims that are tied to a *common core of operative facts.*" *Id.* at 664, 125 S. Ct. 2562 (emphasis added).

In "search[ing] for a common core of operative facts in the two pleadings," *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004), courts should remain aware that "the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide,'" *Glover v. FDIC*, 698 F.3d 139, 146 (3d Cir. 2012). "Thus, only where the opposing party is given 'fair notice of the general fact situation and the legal theory upon which the amending party proceeds' will relation back be allowed." *Glover*, 698 F.3d at 146 (quoting *Bensel*, 387 F.3d at 310). For example, we have held that "amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction[,] or occurrence in the preceding pleading fall within Rule 15(c)" because the opposing party will have had sufficient notice of the circumstances surrounding the allegations contained in the amendment. *Bensel*, 387 F.3d at 310.

*United States v. Santarelli*, 929 F.3d 95, 101 (3d Cir. 2019).

   i.  *Claim I*

   Claims I does not relate back to the October 30, 2017 letter. Claim I asserts that counsel assured Petitioner that the plea agreement agreed to in 2016 had the same appeal wavier as a 2015 proposed plea agreement. Petitioner claims this advice was incorrect. This type of ineffective assistance of counsel claim does not relate back to Petitioner's claims in the October 30, 2017 letter regarding asset forfeiture or the lack of advice of upward sentencing departures

referenced in the October 30, 2017 letter. This is not of the same time and type of claim as raised in the October 30, 2017 letter.

Additionally, Petitioner argues in Claim I that his plea agreement was not knowing or voluntary because counsel advised him that the appeal waiver was irrelevant because the only issue left to be decided was actual loss. This Court finds that this issue also does not relate back to the October 30, 2017 letter. Again, the October 30, 2017 letter related to asset forfeiture and upward sentencing departures, not counsel's purported ineffectiveness when it came to his advice regarding the purported irrelevancy of the appeal waiver. Thus, it is not of the same time and type as in the October 30, 2017 letter nor tied to a common core of operative facts.

Furthermore, Petitioner's October 30, 2017 filing did not claim that his plea agreement was not knowing or voluntary due to counsel's purported bad advice. Indeed, the letter states at one point that it is not to be construed as a withdrawal of petitioner's plea agreement. Any potential vagueness on this point is alleviated by Petitioner's subsequent letter dated January 18, 2018, where he again reiterated that he did not seek to withdrawal his guilty plea. (*See* Civ. No. 13-1836 ECF 1 at 2). This lends further support to find that Respondent was not on fair notice of this claim through the October 30, 2017 filing. Accordingly, this Court finds that the issues raised in Claim I do not relate back to the October 30, 2017 letter.

     ii.    *Claim III*

Next, Claim III asserts that counsel was ineffective for failing to file a direct appeal despite Petitioner's instructions for him to do so. This also does not relate back to the common core of operative facts raised in the October 30, 2017 letter. Instead, it involves the communications and discussions between Petitioner and his counsel regarding whether Petitioner wanted him to file an appeal after sentencing.

     iii.    *Equitable Tolling Does Not Apply to Claim I and III*

Prior to holding Claims I and III are untimely, this Court must analyze whether equitable tolling applies. In extraordinary circumstances, the limitations period for the filing of a § 2255 motion may be equitably tolled. *See Ross v. Varano*, 712 F.3d 784, 798-99 (3d Cir. 2013). The Supreme Court has held that a petitioner seeking to establish equitable tolling must demonstrate: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* at 798 (internal quotation marks and citations omitted). In this case, Petitioner makes no showing that equitable tolling should apply to make either Claim I or Claim III timely. Accordingly, this Court will not apply equitable tolling to save these two claims.

     iv.    *Relation Back of Claim II*

Despite Claim I and Claim III's untimeliness, Claim II *may* relate back to the October 30, 2017 letter if it is construed very liberally. Claim II asserts that Petitioner's counsel failed to investigate actual losses resulting from his offenses. Those losses were determined to be $3.5 million which became part of Petitioner's restitution. Thus, this actual loss amount is presumably related to the amount of Petitioner's asset forfeiture in helping to pay his restitution. Accordingly, and out of the abundance of caution, this Court will analyze Claim II on the merits to the extent it may relate back to the October 30, 2017 letter regarding the government's execution of Petitioner's asset forfeiture.

  B.  <u>Claim II - Merits</u>

Petitioner states in Claim II that while counsel hired an accounting firm to serve as an expert witness to determine actual loss, counsel did not investigate or inform the Court of the accounting firm's determination and recommendation that would have proven the government's

alleged amount of loss was inflated. In support of this claim, Petitioner attaches a declaration

from a C.P.A. at the accounting firm hired by counsel which states in relevant part:

> As previously stated in my prior certification, not all of the Harco
> family companies' information has been included in the Eisner
> Amper Report. Therefore it is not possible to measure what the
> true net theft is since there may be offsets. This affects the amount
> of restitution since Gomidas has already relinquished his shares
> and their value has not been determined. This may ultimately
> affect the sentencing of Gomidas. Therefore, all of the diverted
> funds, by all of the brothers, and all of the entities must be
> measured – others the valuation of anyone's interest will not be
> accurate and any set off and restitution between entities and the
> brothers is not possible. Unless and until full discovery is provided
> for all entities that are owned or controlled by any of the
> Hartounian brothers, none of the interested parties (Courts, U.S.
> Attorney, professionals and the litigants) can know the truth and
> make appropriate decisions.

(Civ. No. 18-1386 ECF 5 at 113).

The legal standard to analyze an ineffective assistance of counsel claim is set forth in

*Strickland v. Washington,* 466 U.S. 668 (1984). First, the petitioner must show that considering

all circumstances, counsel's performance fell below an objective standard of reasonableness. *See

id.; see also Ross,* 712 F.3d at 798. Petitioner must identify acts or omissions that are alleged not

to have been the result of reasonable professional judgment. *See Strickland,* 466 U.S. at 690.

"The court must then determine whether, in light of all the circumstances, the identified acts or

omissions were outside the wide range of professionally competent assistance." *Id.*

Second, a petitioner must affirmatively show prejudice, which is found where "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *See id.* at 694; *see also McBride v. Superintendent, SCI Houtzdale,*

687 F.3d 92, 102 n.11 (3d Cir. 2012). The reasonable probability standard does not require

certainty or even a preponderance of the evidence. *See Boyd v. Waymart,* 579 F.3d 330, 354 (3d Cir. 2009). "In the context of pleas a [petitioner] must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citations omitted).

In this case, Petitioner is asserting that counsel failed to investigate the actual loss amount.

> [T]o show prejudice, a defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produce a different result."

*United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("[w]hen a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced"); *Untied States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008) (failure to investigate claimant must show that but for the inadequate investigation, there is a reasonable probability exculpatory evidence would have been found which would undermine confidence in his conviction); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of petitioner's case).

First, Petitioner fails to show that counsel's performance fell below an objective standard of reasonableness. Indeed, Petitioner himself indicated to counsel that he did not want to move

forward with his Federal Rule of Criminal Procedure 17(c) motion to subpoena documents. (*See* Civ. No. 18-1386 ECF 20-1 at 135). Thus, it was Petitioner, not counsel, who ultimately wanted the investigation into actual loss amount stopped. Counsel's performance is not ineffective in this instance of failure to investigate where Petitioner told him to stop investing the issue.

Additionally, Petitioner fails to show prejudice in Claim II. Indeed, he comes forward with no evidence as to that further investigation by counsel would have led to a conclusion that the actual losses were less than what Petitioner himself agreed upon in the plea agreement to be at $3.5 million.

Accordingly, for these reasons, Claim II is denied on the merits. *See Raisley v. Untied States*, No. 13-1134, 2016 WL 1117944, at *4 (D.N.J. Mar. 22, 2016) (denying ineffective assistance of counsel claim for failure to investigate where petitioner came forward with no evidence that further investigation by counsel would have negated the evidence of damages produced at trial).

## V.      CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In *Slack v. McDaniel,* 529 U.S. 473, 484 (2000), the United States Supreme Court held: "When the district court denies a habeas petition on procedural grounds without reaching

the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

     Petitioner has not met the standard for a COA. Thus, This Court will not issue a COA.

## VI.    CONCLUSION

     For the foregoing reasons, the habeas petition is denied. Claims I and III are time-barred and Claim II fails on the merits. A COA shall not issue. An appropriate order will be entered.

DATED: May 1, 2020

                                   s/*Peter G. Sheridan*_____
                                   PETER G. SHERIDAN, U.S.D.J.